UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Michael A. Rowe

    v.                                Civil No. 11-cv-366-JL

Liberty Mutual Group, Inc.

**SUMMARY ORDER**

Michael Rowe has sued his former employer, Liberty Mutual Group, Inc.  He claims that he was fired for, among other things, "raising concerns that Liberty Mutual could face exposure for failing to comply with 'made-whole' statutes in jurisdictions other than Montana" (where Liberty Mutual was, with Rowe's assistance, defending a class-action lawsuit accusing a predecessor-in-interest of violating that state's "made-whole" laws, Ferguson v. Safeco Ins. Co. of Am., No. 04-628B (Mont. Dist. Ct. Sept. 23, 2004)).

During discovery in this action, Liberty Mutual has objected to a number of Rowe's written discovery requests, and instructed some of its witnesses not to answer certain questions at their depositions, on the basis of the attorney-client privilege.  Rowe has disagreed with Liberty Mutual's assertion of the privilege in many of these instances.  Proceeding pro se, he filed a motion to compel Liberty Mutual to provide, inter alia, the discovery it had withheld on that basis, as well as several other motions

seeking other forms of relief.  These filings were preceded by frequent, and often voluminous, emails from Rowe to counsel for Liberty Mutual.

To try to resolve these discovery disputes in an orderly fashion, this court held a telephone conference with Rowe and counsel for Liberty Mutual.  Following the call, the court ordered Liberty Mutual to file a motion for a protective order, see Fed. R. Civ. P. 26(c)(1), together with a supporting memorandum.  Order of May 20, 2013, at 3.  The memorandum was to address, among other things, whether Liberty Mutual had waived any attorney-client privilege as to certain communications by "putting the communications at issue through Liberty Mutual's defense in this action, including its assertion[] that aside from, arguably, an e-mail of March 31, 2011"--which Liberty Mutual produced in discovery in this action--"Rowe had never raised any concerns about Liberty Mutual's 'made whole' practices," at least outside of Montana.  Id.

Liberty Mutual's response did not dispute that it had, in fact, made precisely that assertion, or that such an assertion would amount to an "at-issue" waiver of the attorney-client privilege.  Instead, in the sole paragraph of its memorandum devoted to the apparent at-issue waiver of the privilege as to these communications, Liberty Mutual argued that:

> Rowe asserts that he raised concerns about Liberty
> Mutual's made whole practices in states other than
> Montana.  It is undisputed that Ferguson (and therefore
> any communication about Ferguson) involves only Montana
> law . . . .  Because the first (and only) time he
> raised concerns about any other jurisdiction was on
> March 31st, through his email . . . Liberty Mutual has
> not placed [Rowe's] pre-March 31, 2011, Ferguson
> communications at-issue since those communications, by
> definition, related only to the application of made
> whole in Montana.

(citation omitted).

But, as this court explained in denying Liberty Mutual's

motion for a protective order as to these communications, "[t]he

problem with this argument is its assumption that, merely because

a communication by Rowe can be characterized as 'about the

Ferguson case," it is "by definition related only to the

application of made-whole law in Montana." Order of July 16,

2013, at 12.  Moreover, this court observed, "Liberty Mutual has

never flatly denied the existence of communications 'about the

Ferguson case' that also reflect Rowe's stated concerns about the

company's compliance with made-whole laws outside of Montana,"

relying instead "solely on Rowe's inability to identify, at his

deposition in this case, particular states where he thought the

company's made-whole practices were deficient--as opposed to, for

example, positive statements by other Liberty Mutual employees

that Rowe had never raised that subject with them." Id. at 13.

So, after rejecting Liberty Mutual's logically flawed argument against the existence of communications reflecting Rowe's concerns about Liberty Mutual's made-whole practices outside of Montana, the court found that Liberty Mutual's assertion that Rowe had raised no such concerns until March 31, 2011 "effects an implied waiver of the attorney-client privilege as to the communications as to the Ferguson lawsuit identified in Liberty Mutual's November 2012 privilege log." Id. at 16 (footnote omitted).  Nevertheless, noting Liberty Mutual's position that, "at least 'arguably,' those materials are not responsive to Rowe's discovery requests here," the court ordered Liberty Mutual to submit the materials for in camera inspection, by a date certain, so the court could "determine their relevance, if any, to this action" and, subsequently, order the production of relevant documents--if any--to Rowe. Id.  Both Rowe and Liberty and Mutual have moved for reconsideration of this aspect of the court's order. See L.R. 7.2(e).  Both motions are denied.

**Liberty Mutual.**  Liberty Mutual argues that this court "made a manifest errors [*sic*] of fact and law in reaching its conclusion."  Significantly, though, none of the alleged "manifest errors" occurred when the court rejected the sole argument, just discussed, that Liberty Mutual actually made in support of its motion for protective order as to the

4

communications in question.  Instead, Liberty Mutual has used its
motion to reconsider to advance entirely new arguments as to the
scope of the at-issue waiver doctrine.  These arguments
essentially reduce to the proposition that Liberty Mutual did not
waive the attorney-client privilege as to communications
reflecting Rowe's concerns over the company's made-whole
practices beyond Montana merely by its "denial of [his]
whistleblower claims."

> As the Court of Appeals has admonished, however:
>
> Litigation is not a game of hopscotch.  It is generally
> accepted that a party may not, on a motion for
> reconsideration, advance a new argument that could (and
> should) have been presented prior to the district
> court's original ruling.  This principle has deep
> prudential roots.  Litigants normally must frame the
> issues in a case before the trial court rules.  After
> that point, a litigant should not be allowed to switch
> from theory to theory like a bee in search of honey.

Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003)
(citation omitted).  That is just what Liberty Mutual is trying
to do here.  This court very clearly directed Liberty Mutual to
address whether any attorney-client privilege had been waived by
"putting the communications at issue through [its] defense in
this action, including its assertion[] that . . . Rowe had never
raised any concerns about Liberty Mutual's 'made whole'
practices" outside of Montana until March 31, 2011.  Order of May
20, 2013, at 3.  Yet, in its response, Liberty Mutual did not

make any of the arguments as to the scope of the at-issue waiver
doctrine that it now makes in its motion for reconsideration.
Indeed, as already noted, Liberty Mutual questioned neither this
court's characterization of Liberty Mutual's position as an
"assertion" (as opposed to a "denial") nor that such an assertion
would, in and of itself, amount to an at-issue waiver of the
privilege.  Instead, Liberty Mutual chose to rely solely on an
argument that, if communications were "about Ferguson," they
could not also reflect Rowe's concerns about made-whole laws
outside of Montana.  The logic of that argument simply does not
hold, as evidenced by (if nothing else) the fact that the
rejection of it is not among the numerous "manifest errors" that
Liberty Mutual accuses this court of making.

    Liberty Mutual now declares that "[i]n order to maintain the
fidelity of its attorney-client privilege regarding the Ferguson
case, which is a pending matter, Liberty Mutual must seek
reconsideration."  This statement gets it backwards.  Had Liberty
Mutual wished "to maintain the fidelity" of the privilege over
those communications, it ought to have made all of its arguments
against an at-issue waiver of that privilege in its motion for
protective order, as this court directed.  Instead, Liberty
Mutual elected to devote a single paragraph of that motion to
trying to show, as a logical matter, that communications that

were both "about <u>Ferguson</u>" and its made-whole practices could not

exist--and then, when this "argument" failed to persuade,

unleashed a barrage of attacks on this court's formulation of the

at-issue waiver doctrine for the first time in a motion for

reconsideration.  That is a wholly improper, and completely

unworkable, way to conduct motion practice, particularly in the

face of this court's efforts to bring order to the chaos into

which discovery practice here has descended.[1]

Liberty Mutual's arguments as to the scope of the at-issue

waiver doctrine are without merit, in any event.  In essence,

Liberty Mutual maintains that it should be allowed to deny that

Rowe ever communicated concerns about its made-whole practices

outside of Montana until his March 31 email to in-house counsel

(which Liberty Mutual has chosen to disclose), while using the

---

[1]While much of that chaos has originated with Rowe, a pro se
litigant, Liberty Mutual has also played a role in bringing it
about.  In particular, Liberty Mutual instructed its witnesses
not to answer questions about a meeting they attended, invoking
attorney-client privilege--even though the substance of the
meeting was discussed in detail in a document that Liberty Mutual
had already produced to Rowe in this litigation.  When directed
to show why this disclosure did not waive the privilege,
moreover, Liberty Mutual was unable to muster any argument,
merely stating that it "maintains the privilege has not been
waived" but "recognizes, however, that the court may reach an
opposite conclusion."  Unsurprisingly, the court did, ordering
the re-opening of the depositions so that the witnesses could
answer questions that Liberty Mutual instructed them not to based
on an invocation of privilege that Liberty Mutual made no effort
to defend when called upon to do so.

attorney-client privilege to prevent Rowe--and, ultimately, the
finder of fact--from evidence as to the content of his
communications with Liberty Mutual's in-house lawyers prior to
March 31, during conversations about the Montana litigation.[2]  As
this court explained in the prior order, such a litigation
posture offends the very "'fairness concerns'" that the at-issue
waiver doctrine serves to protect.  Order of July 16, 2013, at 14
(quoting In re Keeper of Records (Grand Jury Subpoena to XYZ
Corp.), 348 F.3d 16, 24 (1st Cir. 2003)).

     Indeed, it is well-settled that "a defendant may not use the
privilege to prejudice his opponent's case or to disclose some
selected communications for self-serving purposes."  3 Jack B.
Weinstein & Margaret A. Berger, Weinstein's Federal Evidence
§ 503.41[1], at 503-114--115 (2d ed. 1997 & 2013 supp.)
(quotation marks and bracketing omitted).  That is precisely what
Liberty Mutual has done.  It has disclosed one of its attorney-

---

[2]Liberty Mutual has not provided, and this court is not
aware of, any authority supporting its argument (raised for the
first time on reconsideration) that, when one party elects to
characterize privileged communications like Liberty Mutual has
done here, it is not an at-issue waiver unless the other party
can come forward with independent evidence disputing that
characterization.  Of course, the very reason for implying an at-
issue waiver under these circumstances is that, without discovery
into the communications, the adverse party is unfairly left
unable to dispute the characterization.  Order of July 16, 2013,
at 15.

client privileged communications--Rowe's March 31, 2011 email to

in-house counsel about the company's made-whole practices outside

of Montana--but refused to produce his communications with in-

house counsel on that subject prior to that date, all while

denying that any such communications exist.[3]  This court discerns

no error, manifest or otherwise, in its finding that this amounts

---

[3]Not surprisingly, the cases that Liberty Mutual cites (all
for the first time) in its motion for reconsideration do not
support using the attorney-client privilege in this fashion.  See
Emerson Electric Co. v. Ouellette, No. 96-364, 1998 WL 34088465
(D.N.H. May 12, 1998) (defendants in legal malpractice action
sought plaintiff's communications with subsequent counsel to
support superseding cause and failure to mitigate defenses); Oxyn
Telecomms., Inc. v. Onse Telecom, No. 01-1012, 2003 WL 660848, at
*6 (S.D.N.Y. Feb. 27, 2003) (plaintiff in fraud action sought
defendant's communications with counsel to show scienter); Std.
Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc., 111
F.R.D. 76, 81 n.2 (S.D.N.Y. 1986) (defendant to fraud claims
sought plaintiff's communications with counsel to show lack of
reliance on defendant's statements); Chase Manhattan Bank N.A. v.
Drysdale Secs. Corp., 587 F. Supp. 57, 59 (S.D.N.Y. 1984) (same).
Indeed, many of Liberty Mutual's cases recognize that, simply by
suing its liability insurer for coverage, an insured does not put
at issue its communications with counsel as to the facts
underlying the claim for which it sought coverage on the theory
that those communications might show when the insured knew of
those facts, potentially disentitling it coverage.  See Rhone-
Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir.
1994); Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D.
408, 416 (D. Del. 1992); N. River Ins. Co. v. Phila. Reins. Co.,
797 F. Supp. 363, 370-71 (D.N.J. 1992).  Here, in contrast,
Liberty Mutual has made an issue of its privileged communications
by taking the position that, aside from the March 31, 2011 email,
they do not reflect that Rowe raised the concerns over the
company's legal compliance that, he alleges, he was terminated
for raising.  That is an at-issue waiver.  Order of July 16,
2013, at 14-16.

to an at-issue waiver of the attorney-client privilege as to communications reflecting Rowe's concerns with Liberty Mutual's made-whole practices outside of Montana.

Liberty Mutual further argues that this court manifestly erred by finding that Liberty Mutual's presentation left a question as to whether any such communications even existed so as to necessitate in camera review.  This argument is not well-taken.  Again, in response to this court's directing it to move for a protective order as to the communications entered on the November 2012 privilege log, Liberty Mutual stated only that they were "arguably beyond [Rowe's] requests."  These requests included "all communications relating in any way to concerns [he] expressed during his employment relating to Liberty Mutual's compliance with 'made-whole' laws in any jurisdiction whatsoever."  Liberty Mutual did not offer any other characterization of the communications listed on the log.

Yet, in Liberty Mutual's view, this court made a manifest error in concluding, based on the limited information Liberty Mutual chose to provide, that the communications entered on the privilege log could reflect Rowe's concerns about the company's made-whole practices outside of Montana so as to warrant in camera review.  This is so, Liberty Mutual maintains, because to negate that possibility, it "would potentially be required to

10

submit evidence from every employee, or at least from individuals purporting to speak for every Liberty Mutual employee," to show "that no one at Liberty Mutual knew of [Rowe's] alleged made-whole concerns."  But this argument confuses the question of whether Rowe in fact expressed those concerns with the considerably less far-ranging question of whether the documents listed on the privilege log reflect that he did.  It was Liberty Mutual's failure to provide a factual answer to that question (relying, instead, on its unavailing logical argument) that led this court to conclude that in camera review was necessary.[4]

This failure was difficult to understand at the time, and has become only more so now that Liberty Mutual has actually produced the documents for in camera review (after an initial announcement of its refusal to comply with that aspect of this court's order, see Order of July 22, 2013).  This court has since carefully reviewed the documents, and they do not, in fact, reflect Rowe's concerns with Liberty Mutual's made-whole

---

[4]It is also worth noting that, as this court's in camera review of the documents reveals, they seem to involve only a small group of correspondents with whom Rowe was working on particular issues in the Ferguson litigation.  So another way of showing that the privilege log did not contain communications reflecting Rowe's concerns with made-whole laws outside of Montana--short of "submit[ting] evidence from every employee in the company"--would have been simply to submit affidavits from the members of this group attesting that they knew of no such communications.

practices in states outside of Montana, or, for that matter, on a
national level.  Nor, so far as this court can tell, are they
relevant to any other issue in the case, which means that--any
privilege aside--they are not discoverable.  See Fed. R. Civ. P.
26(b)(1).  Based on this finding, the court grants Liberty
Mutual's motion for a protective order against the disclosure of
these materials.  See Fed. R. Civ. P. 26(c)(1)(A).

So Liberty Mutual could have avoided litigating the question
of at-issue waiver, and obtained a protective order against the
disclosure of these communications, simply by arguing that the
communications were not relevant, and submitting them for in
camera review to prove as much.  But, for reasons that are
unclear to this court, Liberty Mutual chose not to do so, nor to
meaningfully address whether it had waived the privilege by
putting those communications at issue, as the court had expressly
directed it to do.  Because its arguments are untimely and
unpersuasive, Liberty Mutual's motion for reconsideration is
denied, insofar as it is not mooted by the court's ruling herein
that the documents produced for in camera review are not relevant
and, therefore, shall be subject to a protective order against
discovery in any event.

**Rowe.**   Rowe, for his part, has moved for reconsideration of this court's prior order that Liberty Mutual produce the documents for in camera review.   Rowe argues that this aspect of the order is too narrow, both as to the scope of the production Liberty Mutual was ordered to make, and the scope of the in camera review the court announced it would undertake.   Rowe's first argument is untimely and the second is moot.

First, Rowe suggests that Liberty Mutual should have to produce additional documents, beyond those listed on the November 2012 privilege log, responsive to his discovery requests.   As noted in the prior order, Liberty Mutual objected to those requests on the basis of undue burden, asserting that they "would likely require searching through thousands of pages of e-mails and other documents." Order of July 16, 2013, at 6.   Rowe now calls this assertion "ridiculous," and proposes to narrow his discovery requests.   That ship has sailed, however.   Discovery in this matter closed several months ago, on April 1, 2013.   Thus, in its order following the telephone conference in May 2013, this court denied Rowe's outstanding requests for additional discovery except to the extent granted by the order itself or "insofar as they seek particular information as to which Liberty Mutual has claimed attorney-client or work product privilege." Order of May 20, 2013, at 2.   It was for this reason that Liberty Mutual was

13

directed to show that those privileges had not been waived as to documents listed in its privilege logs, id. at 2-3, which, as it explained during the conference, it had identified in spite of its burdensomeness objections.  Rowe did not seek reconsideration of the May 2013 order insofar as it limited the additional discovery he might get to that subset of documents.  It is too late for him to do so now, at least without good cause for missing the 14-day deadline for reconsideration, which he has not attempted to show.  See L.R. 7.1(e).

Second, Rowe argues that his claim in this action is actually that he was fired for "his advocacy for reforming made whole practices nationwide, including Montana."  Thus, he complains, the court erred by suggesting in the prior order that it would conduct in camera review of the documents submitted by Liberty Mutual only insofar as they reflected his concerns with the company's made-whole practices outside of Montana.  Assuming, without deciding, that Rowe has properly characterized his claim, he has mischaracterized this court's order, which announced that it would "review [the] documents to determine their relevance, if any, to this action."  Order of July 16, 2013, at 20 (emphasis added).  As already discussed, the court has done so, and concludes that the documents do not reflect Rowe's concerns about Liberty Mutual's made-whole practices in any state outside of

14

Montana or, for that matter, on a national level.  Rowe's motion for reconsideration is denied.

**Motion to Compel.**  Finally, a few days after this court issued its order, Rowe filed a "motion to compel," seeking to force Liberty Mutual to "produce documentary evidence of" a meeting of April 6, 2011.  In the order, the court ruled that Liberty Mutual had waived any attorney-client privilege covering the meeting, and ordered it to (1) produce witnesses who had been instructed not to answer deposition questions about the meeting on the basis of the privilege for reopened depositions on that limited subject, and (2) "produce to Rowe forthwith the documents related to the April 6 meeting that it has identified on its privilege logs."  Order of July 16, 2013, at 19.  Rowe complains that Liberty Mutual "produced only a very small number of emails in response," which he takes to suggest that Liberty Mutual is either withholding documents despite the court's order, or that it has destroyed documents concerning the meeting.

This is apparently news to Rowe, who has repeatedly made similar arguments throughout this litigation, but "this court cannot compel a party to produce documents that do not exist." West v. Bell Helicopter Textron, Inc., 2011 DNH 217, 27 (quotation marks omitted).  At the re-opened depositions, Rowe could have inquired of the witnesses as to the existence of

additional documents concerning the meeting and, if this exercise revealed some evidence to support his suspicion that they do, or that they did exist but have since been destroyed, could have sought further relief.  Instead, however, around 9 a.m. on the day that the re-opened depositions were scheduled to occur, Rowe filed a "reply" to Liberty Mutual's objection to his motion to compel, stating that it "confirms what [he] predicted would be the end result of the deposition continuances; hence there is nothing to be gained by proceeding with same"[5] and that, as a consequence, he was "waiving his rights to [re-open] the two depositions." Rowe has thus chosen to forfeit his means of finding out whether there are, in fact, additional documents about the meeting that Liberty Mutual has failed to produce. Without any basis for believing that is the case, the court must deny Rowe's motion to compel.

For the foregoing reasons, Rowe's "emergency motion for reconsideration"[6] and motion to compel,[7] and Liberty Mutual's motion for reconsideration[8] are DENIED.  Liberty Mutual is

---

[5]Rowe's reply does not further explain what he means by this cryptic statement.

[6]Document no. 71.

[7]Document no. 72.

[8]Document no. 75.

granted a protective order against disclosure of the documents it submitted for in camera review because they are not relevant.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 8, 2013

cc:  Michael A. Rowe, pro se
     Emily G. Rice, Esq.
     Edward J. Sackman, Esq.

17